UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| FAMILY EXPRESS CORPORATION, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO.: 2:16-CV-103-TLS |
| SQUARE DONUTS, INC., | ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

This case arises from a dispute over the use of the words "Square Donuts" in connection with the sale of donuts by two different Indiana corporations. The Plaintiff in this Declaratory Judgment action, Family Express Corporation, seeks a declaration from the Court that its use of the name "Square Donuts" in association with the sale of square-shaped donuts at Family Express convenience stores does not infringe on Defendant Square Donuts, Inc.'s, asserted trademark rights in "Square Donuts." In addition to this declaration of non-infringement, the Plaintiff also seeks cancellation of the Defendant's existing Indiana and federal trademarks.

The Defendant has filed a Motion to Dismiss [ECF No. 15] pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a), on grounds that the Northern District of Indiana is not the proper venue.

## COMPLAINT ALLEGATIONS

The Plaintiff filed its Complaint for Declaratory Judgment on March 23, 2016. The Complaint identifies the Plaintiff as a corporation organized and existing under the laws of the State of Indiana with its principal place of business located in Valparaiso, Indiana. The Defendant, Square Donuts, Inc., is also identified as a corporation organized and existing under

the laws of the State of Indiana, with its principal place of business located in Terre Haute, Indiana.

The Defendant began selling square-shaped donuts in Terre Haute in 1967. The Defendant currently sells its donuts under the name "Square Donuts" in bakeries located in Terre Haute, Indianapolis, Bloomington, and Richmond, Indiana, as well as through Ricker's convenience stores located in central Indiana. The Plaintiff operates convenience stores in northern Indiana. Since at least 2005, the Plaintiff has been selling and advertising square-shaped donuts in its stores, which it refers to as "Square Donuts."

On January 17, 2006, the Defendant issued a cease and desist letter to the Plaintiff, asserting the Defendant's trademark rights in the "Square Donuts" name, and claiming that the Plaintiff was in direct violation of the Defendant's trademark. The Defendant threatened to initiate legal proceedings if the Plaintiff did not cease its use of the Square Donuts name. In a letter dated January 30, 2006, counsel for the Plaintiff set forth the Plaintiff's position that no infringement existed because Square Donuts was merely descriptive of square-shaped donuts and, therefore, the Defendant did not and could not assert exclusive rights to use the name. The Defendant did not respond to the Plaintiff's letter, and the Plaintiff continued to devote resources to promoting, marketing, and selling its square-shaped donuts in connection with the Square Donuts name in its convenience stores throughout northern Indiana.

On January 6, 2012, the Defendant obtained an Indiana State trademark registration for the mark "Square Donuts Inc." (File No. 2012-0017) in connection with the production and sale of square-shaped donuts. In May 2013, the Defendant obtained a federal trademark registration for the standard character mark "Square Donuts" (Reg. No. 4341135) in Class 043

for "café services," as well as a federal trademark registration for "Square Donuts" and an accompanying design (Reg. No. 4341136) in Class 035 for "retail bakery shops."

In October 2015, the Plaintiff filed a federal trademark application for "Square Donuts" (App. No. 86779997) in Class 030 for "donuts" and Class 035 for "retail convenience stores."

On January 6, 2016, the Plaintiff contacted the Defendant and requested that they enter a co-existence agreement so that both parties could continue using the Square Donuts name to describe their respective products throughout Indiana. The Plaintiff reasserted this request on January 26, 2016.

On January 27, 2016, the U.S. Patent and Trademark Office refused to register the Plaintiff's Square Donut mark, App. No. 86779997, on the grounds of likely confusion with the Defendant's preexisting trademark registrations for Square Donuts, Reg. No. 4341135, and Square Donuts & Design, Reg. No. 4341136.

On January 29, 2016, the Defendant, by counsel, responded to the Plaintiff's request for an agreement, advising that the Plaintiff's request caused the Defendant substantial concern, and asking the Plaintiff to provide more detail about what it considered its territory and any expansion plans, as that would help the Defendant understand the implications of the request. In February 2016, the parties discussed by telephone their respective trademark rights and a possible co-existence agreement. On February 29, 2016, the Defendant rejected the proposal to enter a co-existence agreement.

The Plaintiff alleges that both parties are currently expanding their businesses in Indiana—the Defendant to the north and the Plaintiff to the south—such that the threat of

overlapping markets now exists. The Plaintiff maintains that it must choose between no longer describing its donuts as Square Donuts, or operating under continuous threat of litigation. In Count I of the Complaint, the Plaintiff seeks a declaration that its use of Square Donuts to describe its product as a square-shaped donut does not infringe on the Defendant's trademark rights. In Count II of the Complaint, the Plaintiff seeks cancellation of the Defendant's trademark pursuant to 15 U.S.C. § 1064(3) on grounds that the mark is generic.

## ANALYSIS

**A.     Legal Standard**

On consideration of the Motion to Dismiss, the court must resolve all factual disputes and draw all reasonable inferences in the plaintiff's favor, *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011), with the plaintiff then bearing the burden of establishing that venue is proper, *Grantham v. Challenge–Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969). If venue is improper, the court may either dismiss the suit or transfer it to a district in which the plaintiff could have filed it initially. *See* 28 U.S.C. § 1406(a) (directing a court to transfer a case filed in the wrong division "to any district or division in which it could have been brought" if "it be in the interest of justice"). Venue can be proper in more than one district. *See Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009).

To resolve the Defendant's Motion, the Court must look to the federal venue statute, 28 U.S.C. § 1391(b). It provides that venue exists in "(1) a judicial district in which any defendant resides, if all defendants reside" in the same State, or "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part

4

of the property that is the subject of the action is situated." 28 U.S.C. § 1391(b).[1] The Plaintiff asserts that a substantial part of the events giving rise to its Complaint for Declaratory Judgment have taken place in the Northern District of Indiana, thus relying on subsection (b)(2) of the venue statute.

Under § 1391(b)(2), venue may be proper in more than one district as long as a "substantial" part of the key events or omissions occurred in the district. "The test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in the particular district." *TruServ Corp. v. Neff*, 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998); *see also State Auto Ins. Cos. v. Whirlpool Corp.*, 62 F. Supp. 3d 857, 866 (W.D. Wis. 2014) (describing the test as "more of a qualitative, rather than quantitative inquiry")."[F]or events to be considered 'substantial' under the statute, it is sufficient for the plaintiff to establish that the events occurring in the forum district 'were part of the historical predicate for the instant suit.'" *Estate of Moore v. Dixon*, 460 F. Supp. 2d 931, 936 (E.D. Wis. 2006) (quoting *Master Tech Prods., Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 1998)). The events "must have a 'close nexus' to the alleged claim." *Id.* (quoting *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 433 (2d Cir. 2005)). In addition, the requirements "'may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action.'" *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003) (involving breach of contract,

---

[1] If neither subsection (b)(1) nor (b)(2) apply, a third subsection applies and supports venue in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3).

fraud, negligent misrepresentation, tortious interference, fraud, and unjust enrichment) (first quoting *Fogelson v. Iatrides*, No. 99 C 6892, 2000 WL 631293, at *3 (N.D. Ill. May 12, 2000); then quoting *Consol. Ins. Co. v. Vanderwoude*, 876 F. Supp. 198, 200–01 (N.D. Ind. 1995)).

B.  **Venue Under § 1391(b)(2) is Distinct From Personal Jurisdiction**

Having set forth the standard for venue under the "substantial part of the events" language of § 1391(b)(2), the Court clarifies that the focus of the pending Motion to Dismiss, and this Opinion, is venue—not personal jurisdiction. The Court makes this distinction because the Defendant has conflated the venue inquiry with personal jurisdiction. (*See* Mot. to Dismiss 1, ECF No. 15 ("Applying principles of general and specific personal jurisdiction, Square Donuts is not subject to venue in the Northern District of Indiana.").) Specifically, the Defendant argues that the "substantial part of the events" language of § 1391(b)(2) "considers whether [the Defendant] is subject to venue in the Northern District of Indiana based on contacts related to the case, applying the specific jurisdiction standard. Consequently, to establish venue based on specific jurisdiction, [the Plaintiff] would need to show that its cause of action arises from [the Defendant's] contacts with the Northern District of Indiana." (Mem. in Supp. of Mot to Dismiss 6, ECF No. 16 (citing *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915 (2011); *see also id.* 7–8 (citing cases involving personal jurisdiction and concluding that "[c]onsidering either general or specific jurisdiction standards, the minimal facts alleged are insufficient to establish that venue is proper over the [the Defendant] in the Northern District of Indiana").)

Personal jurisdiction "goes to the court's power to exercise control over a party," and venue is "primarily a matter of choosing a convenient forum." *See Leroy v. Great W. United*

6

*Corp.*, 443 U.S. 173, 180 (1979); *see also KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 723–24 (7th Cir. 2013) ("While personal jurisdiction governs a court's power over a defendant, federal venue rules determine in which judicial district (among those that have the power to hear a given suit) a suit should be heard."). They are not equivalent and do not address the same concerns.

The constitutional test for personal jurisdiction requires minimum contacts between the defendant and the forum state. *KM Enters.*, 725 F.3d at 723 (explaining that the power over parties "derives ultimately from the state (in the general sense of the term), the party's contacts with the state, and the reasonableness of the assertion of judicial authority"). The Defendant, an Indiana corporation, would not dispute that it has more than minimum contacts with the State of Indiana. Personal jurisdiction over the Defendant within the state, and this Court, is not the issue.

Venue under subsection (b)(2), on the other hand, requires that a substantial part of the claim arise in the district.[2] The test for determining venue under this subsection is not the defendant's "contacts" with a particular district, but rather the location of the events or omissions giving rise to the claim. *Loeb v. Bank of Am.*, 254 F. Supp. 2d 581, 586 (E.D. Pa. 2003); *see also CLP Packaging Solutions, Inc. v. Sports Pouch Beverage Co.*, Civil Action No. 07-1532(SDW), 2008 WL 2095774, at *2 (D.N.J. May 16, 2008) ("Whether a defendant has sufficient contacts with a particular district, establishing personal jurisdiction over the defendant, is not relevant to the Court's analysis of proper venue" under § 1391(b)(2).); *Santa's Best Craft, LLC v. Janning*, No. 02 C 9528, 2003 WL 21504522, at *1 (N.D. Ill. June 30, 2003) (rejecting the plaintiff's

---

[2] Although subsection (b)(3) of the venue statute relies on personal jurisdiction, it only applies if "there is no district in which an action may otherwise be brought as provided in this section."

argument that a personal jurisdiction analysis could be used to establish venue). "[T]he law provides no basis for this Court to conflate an analysis of personal jurisdiction with an examination of venue." *Siswanto v. Airbus*, — F. Supp. 3d —, No. 15 C 5486, 2015 WL 9489952, at *6 (N.D. Ill. Dec. 30, 2015); *see also Steen v. Murray*, 919 F. Supp. 2d 993, 998 (S.D. Iowa 2013) ("It would be an error to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries." (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005))) (alterations omitted).

Here, the Defendant has relied primarily on cases dealing with personal jurisdiction, and not with venue, to support its Motion. The Court thus clarifies that its discussion will be limited to whether the Northern District of Indiana is a proper venue for the Plaintiff's Declaratory Judgment action. The first step in this analysis is to identify the nature of the action. The Court will then consider whether a substantial part of the events giving rise to the action took place in the Northern District of Indiana.

**C.  Nature of the Action**

The Plaintiff has initiated this litigation because it believes that its actions in producing, distributing, advertising, and selling square donuts in the Northern District of Indiana could potentially lead the Defendant to pursue a Lanham Act claim to allege trademark infringement for use of the name Square Donuts. The Plaintiff requests that the Court declare that its actions do not constitute infringement. The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not

8

further relief is or could be sought." 28 U.S.C. § 2201(a). Under the Declaratory Judgment Act, a federal court may exercise its discretion to render declaratory judgments only where there exists an actual controversy. *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995). A case or controversy exists when "the facts alleged, under all the circumstances show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation mark omitted) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273(1941)).

In intellectual property cases, "[t]he purpose of the Declaratory Judgment Act . . . is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987) (patent case). The "injury of which a declaratory judgment plaintiff complains . . . is a wrongful restraint on the free exploitation of non-infringing goods. One of those restraints may be the threat of an infringement suit, as communicated in a cease-and-desist letter." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998).

> In the event a patentee casts its net of cease-and-desist letters too widely and entangles some non-infringing products, a plaintiff may have little recourse other than a declaratory judgment action to disentangle its non-infringing business. In those instances, the cease-and-desist letters are the cause of the entanglement and at least partially give rise to the plaintiff's action.

*Id.*[3]

---

[3] The court in *Red Wing Shoe* was faced with determining whether it had personal jurisdiction over the declaratory judgment defendant, who was also the patentee. The plaintiff argued that three cease and desist letters sent to Minnesota were contacts directly related to the declaratory judgment action and were sufficient to show minimum contacts. The court disagreed, holding that a cease and desist letter alone did not create personal jurisdiction because it did satisfy the requirements of due process. 148 F.3d at 1360. The court acknowledged that "[g]iven the potentially direct relationship between such letters and

9

The Plaintiff claims that it is entitled to relief from uncertainty, and cites several reasons in support of its assertion that its use of Square Donuts does not infringe on the Defendant's trademark. These reasons relate either to the burden the Defendant would have in an infringement action, or to affirmative defenses the Plaintiff could assert in response to an infringement action. First, the Plaintiff contends that its descriptive use of Square Donuts is not trademark use. Second, the Plaintiff points to its distinctive design element with respect to sale of its donuts as eliminating the possibility of consumer confusion. Next, the Plaintiff asserts that the Defendant's Square Donuts trademark is merely descriptive of a feature of the Defendant's goods, for which the Defendant has not established sufficient secondary meaning to warrant trademark protection. As an alternative, the Plaintiff argues that Square Donuts is a generic term

---

a declaratory judgment action, this statement begs for an explanation." *Id.* It noted that some courts provided an explanation by analyzing claims as the mirror image of the declaratory judgment action—as if they were infringement actions— which do not arise out of cease and desist letters. *Id.* Because this approach ignored the "genuine purpose of declaratory judgment actions," the court found that a better explanation for the statement that "cease-and-desist letters alone do not suffice to create personal jurisdiction" could be found in an analysis of the second prong of the traditional Due Process inquiry, which requires that personal jurisdiction comport with "fair play and substantial justice." *Id.* (first quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); then quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

> Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness.

*Id.* at 1360–61.

The Court does not consider the *Red Wing Shoe* case to be relevant to the venue inquire directly, as it turns on the fair play and substantial justice concerns of personal jurisdiction, which are not a part of the statutory venue analysis. However, the case is potentially helpful for the acknowledgment that cease and desist letters are the cause of the entanglement that, at least partially, gives rise to the declaratory judgment cause of action.

for square-shaped donuts, and thus not entitled to trademark protection. The Plaintiff also alleges that there is significant third party use of Square Donuts in connection with describing square-shaped donuts throughout the United States, and that, given this extensive third party use, the Defendant is not entitled to maintain exclusive rights in Square Donuts. The Plaintiff further asserts that the Defendant has waived any right to claim that the Plaintiff's use of Square Donuts infringes on the Defendant's trademark in light of the Plaintiff's long running use of Square Donuts to describe its product, and reference to its square donuts in national magazines. Finally, the Plaintiff asserts that this use supports the doctrine of laches. With respect to its cancellation claim, the Plaintiff alleges that Square Donuts is generic, and not entitled to trademark protection.

"The purpose of trademark protection is to identify the source of a good or service to consumers." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, — F.3d —, No. 14-3261, 2016 WL 2849334, at *2 (7th Cir. May 16, 2016). A trademark includes: "any word, name, symbol, or device, or any combination thereof [used by any person] to identify and distinguish his or her goods, including a unique product, from those manufactured and sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. To be registered, a mark must distinguish the applicant's goods from those of others. *See* 15 U.S.C. § 1052. "Marks are classified into five categories of increasing distinctiveness: 1) generic, 2) descriptive, 3) suggestive, 4) arbitrary, and 5) fanciful." *Mil-Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153, 1156 (7th Cir. 1996) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68 (1992)). Here, the Defendant is entitled to a rebuttable presumption that its registered trademark (1) is not generic or merely descriptive, or, (2) if descriptive, the mark has secondary meaning. 15 U.S.C.

§ 1115(a); *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986).

The Plaintiff, of course, is hoping through this litigation to establish that the Square Donuts trademark is generic, or that it is descriptive and has no secondary meaning in the minds of consumers. Generic terms are not entitled to trademark protection, and descriptive terms only garner protection upon proof of secondary meaning, *G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 992 (7th Cir. 1989), because such marks are "'poor means of distinguishing one source of services from another and because they are often necessary to the description of all goods or services of a similar nature.'" *Mil-Mar Shoe Co.*, 75 F.3d at 1157 (first quoting *Liquid Controls Corp.*, 802 F.2d at 936; then quoting *M.B.H. Enters. v. WOKY Inc.*, 633 F.2d 50, 54 (7th Cir. 1980)). "A generic term is one that is commonly used to name or designate a kind of goods." *Id.* It does not identify the source of a product, but "merely specifies the type, or genus, of thing into which common linguistic usage consigns that product." *Id.* (quoting *Gimix, Inc. v. JS & A Grp., Inc.*, 699 F.2d 901, 905 (7th Cir. 1983)). A descriptive mark "merely describes the ingredients, qualities, or characteristics of an article of trade or a service." *Id.*; *H-D Mich., Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 759 (7th Cir. 2007) (a descriptive term "names a characteristic of a particular product"). A descriptive term obtains secondary meaning, and thus trademark protection, if consumers in the relevant community identify a specific business or a business's reputation by a particular trademark. *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 728 (7th Cir. 1998). Proof that a mark has achieved secondary meaning can be established through direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market, and evidence of intentional copying. *Packman v. Chi. Tribune Co.*, 267 F.3d 628,

641 (7th Cir. 2001).

Even where a mark is protected, it can be used by others if "use of the mark is not 'likely to cause confusion, or to cause mistake, or to deceive.'" *Packman*, 267 F.3d at 639 (quoting 15 U.S.C. § 1114(1)(a)); *see also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004) (noting that holder of a mark does not succeed in a infringement action unless it shows that "the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question"). The Lanham Act also recognizes a fair use defense, which is "based on the principle that no one should be able to appropriate descriptive language through trademark registration." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 951 (7th Cir. 1992). To prevail on the fair use defense, the Plaintiff would have to show that: (1) it did not use "Square Donuts" as a trademark; (2) the phrase is descriptive of its goods; and (3) it used the mark "fairly and in good faith only to describe [its] goods." 15 U.S.C. § 1115(b)(4); *see also Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015); *Packman*, 267 F.3d at 639. In its Complaint, the Plaintiff has also asserted the doctrine of laches as a basis to find that it has not infringed on the Defendant's trademark. The doctrine applies in a traditional trademark infringement case if the defendant shows that (1) the plaintiff had knowledge of the defendant's use of an allegedly infringing mark; (2) the plaintiff inexcusably delayed in taking action with respect to the defendant's use; and (3) the defendant would be prejudiced by allowing the plaintiff to assert its rights at this time. *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792–93 (7th Cir. 2002).

**D.     Activities Giving Rise to the Claim**

The question before the Court is whether a substantial part of the events giving rise to the Plaintiff's declaratory judgment action took place in the Northern District of Indiana. If so, venue is appropriate in this Court.

To support its choice of venue, the Plaintiff points to the fact that the Defendant previously sent a cease and desist letter to the Plaintiff in the Northern District of Indiana. And although no action was taken with respect to that 2006 letter, the Defendant has since expressly rejected a co-existence agreement, which was also communicated to the Plaintiff in the Northern District of Indiana. These activities certainly form the historical predicate for the Plaintiff's uncertainty surrounding its product and potential liability for infringement, but that is not the end of the inquiry.

At least one court has questioned the validity of finding venue in a forum solely on the basis that a cease and desist letter was sent into that forum.

> [I]t is difficult to accept the assertion that merely sending a cease-and-desist letter into a forum, in a declaratory judgment action for non-infringement and/or copyright invalidity, constitutes "substantial" activity as the term is used in Section 1391(b)(2). While such a letter may provoke an alleged infringer to file such a lawsuit, the letter itself has nothing to do with whether the copyright is valid or whether infringement has occurred. In other words, as discussed below, the cease-and-desist letter does not constitute a "substantial" activity "giving rise to the claim(s)." 28 U.S.C. § 1391(b)(2).

*Database Am., Inc. v. Bellsouth Adver. & Publ'n Corp.*, 825 F. Supp. 1216, 1225 (D.N.J. 1993). The court noted that the venue statutes were intended to protect a *defendant* from defending an action in an inconvenient forum, and reasoned that if cease and desist letters, which are logically sent to an alleged infringer in its home forum, automatically provided for venue in the letter recipient's judicial district, venue could be established "in the plaintiff's home forum, without regard to the inconvenience to the defendant at having to defend an action in that forum or

14

whether the defendant has engaged in substantial activities in that forum." *Id.* at 1226 (finding such a result to be "contrary to both the letter and spirit of the venue requirement" which does not provide for venue in the place of the plaintiff's residence). *But see Safety Nat'l Cas. Corp. v. U.S. Dep't of Treasury*, Civil Action No. H-07-643, 2007 WL 7238943, at *5 (S.D. Tex. Aug. 20, 2007) (finding that the requirement that a substantial part of the events giving rise to a claim occur in a particular district "afford[s] sufficient protection to defendants, without reading in additional restrictions" that focus only on the defendant's activities). By comparison, in *Wells' Dairy Inc. v. Estate of Richardson*, 89 F. Supp. 2d 1042 (N.D. Iowa 2000), the court found that venue was appropriate in the district where the defendant not only sent a cease and desist letter, but also "engaged in substantial activities . . . that were directly related to the trademark at issue." *Id.* at 1053–54 (activities within the district included adopting the trademark and manufacturing the products bearing the alleged misappropriate trademark).

Rather than rely solely on the cease and desist letter or the communication regarding the co-existence agreement, the Court considers the underlying substance of the litigation; whether the Defendant's Square Donuts trademark is valid and, if it is, whether the Plaintiff nevertheless has refrained from infringing on the trademark in connection with the sale of its Square Donuts. Assessing the overall nature of the Plaintiff's claims and the nature of the specific events in the forum, the Court concludes that a substantial part of the events or omissions giving rise to the claims took place in both the judicial districts that exist within the State of Indiana. The trademark the Plaintiff seeks to invalidate originated in the Southern District of Indiana and continues to be used there. The Plaintiff, by filing this declaratory action, has tasked itself with overcoming the presumption of protection afforded to the Defendant's registered trademark.

15

Whether the mark is generic will depend on factors that include events that took place in the Northern District of Indiana. *See Hickory Farms, Inc. v. Snackmasters, Inc.*, 500 F. Supp. 2d 789, 794 (N.D. Ill. 2007) (citing as factors to consider when determining whether a mark is generic to include "competitors' use, plaintiff's use, dictionary definitions, media usage, testimony of persons in the trade, and consumer surveys") (citing 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12:13 (4th ed. 2006)). Likewise, whether the mark is descriptive, but has obtained secondary meaning, will scrutinize events and omissions throughout the State of Indiana, so as to determine what the Indiana donut-consuming public believes about the mark and its identity as a single source of square-shaped donuts. Moreover, if the Square Donut mark is found to be a valid trademark, the focus will turn to the actions of the Plaintiff in the Northern District of Indiana. The Court would not be able to declare that the Plaintiff's actions did not infringe on the Defendant's valid trademark without first scrutinizing events that took place in the Northern District of Indiana. For example, the Court would have to determine whether the Plaintiff's actual practice in using Square Donuts is likely to produce confusion, or whether it uses Square Donuts in a non-trademark fashion only to describe its goods. Added to this is the fact that, but for the Defendant's claim that the Plaintiff's use of Square Donuts in the Northern District of Indiana is infringing on its trademark, there would be no case. The Plaintiff's alleged injury—the wrongful restraint on the free exploitation of non-infringing goods—is most directly realized in the Northern District of Indiana. Accordingly, these actions are significant to the genesis of the dispute. Whether the defense of laches applies, as the Plaintiff alleges, will involve scrutiny of the actions undertaken by both parties within both districts.

The Plaintiff has not haled the Defendant into court in a remote district completely unconnected (or only tangentially connected) to the events underlying this litigation. Although another appropriate venue may also exist, the Court has not been tasked with determining the best venue, only with determining whether venue is proper in the Northern District of Indiana. Because the Court cannot say that the Northern District of Indiana has an insubstantial connection to the case, the Defendant's Motion to Dismiss for improper venue is denied.

## CONCLUSION

For the reasons set forth above, the Court DENIES the Motion to Dismiss Square Donuts, Inc., for Improper Venue [ECF No. 15].

SO ORDERED on July 14, 2016.

        s/ Theresa L. Springmann
        THERESA L. SPRINGMANN
        UNITED STATES DISTRICT COURT
        FORT WAYNE DIVISION